MISSOURI, K. & T. RY. CO. OF TEXAS v. BEASLEY et al.

(Court of Civil Appeals of Texas. Texarkana. Dec. 12, 1913. Rehearing Denied Jan. 1, 1914.)

1. TRIAL (§ 256*)—INSTRUCTIONS—SUFFICIENCY—FUTURE EARNINGS.

Defendant cannot complain that an instruction in a personal injury action, that plaintiff should be allowed a sum which would reasonably compensate him for the time lost and the time he would lose in the future, if any, and for his decreased earning capacity in the future, and physical and mental suffering, etc., was defective in not stating that the value of the time plaintiff might lose in the future should be measured by its value in his crippled condition, where it did not request a special charge supplying such omission.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

2. DAMAGES (§ 100*) — FUTURE EARNINGS — VALUE OF TIME.

The value of the time which one negligently injured will lose in the future from his injuries should be estimated at what he will be able to earn in his crippled condition, and not what he could earn if uninjured.

[Ed. Note.—For other cases. see Damages, Cent. Dig. §§ 237–241; Dec. Dig. § 100.*]

3. TRIAL (§ 256*)—PRESERVATION OF GROUNDS—INSTRUCTIONS—REQUEST—NECESSITY.

If an instruction is merely defective in not being complete, the party complaining must have requested an instruction supplying such omission in order to complain thereof on appeal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

Appeal from District Court, Harrison County; W. C. Buford, Judge.

Action by Y. Y. Beasley and others against the Missouri, Kansas & Texas Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

See, also, 160 S. W. 471.

Schluter & Singleton, of Jefferson, and Alex. S. Coke and A. H. McKnight, both of Dallas, for appellant. Jones & Bibb and F. H. Prendergast, all of Marshall, for appellees.

HODGES, J. In October, 1909, the appellee Beasley instituted this suit against the Marshall & East Texas Railway Company and the appellant, Missouri, Kansas & Texas Railway Company of Texas, for damages for personal injuries sustained. The petition alleges that on the 28th day of August, 1909, the appellee was in the employ of the Marshall & East Texas Railway Company as an engineer on one of its passenger trains running between Marshall and Winnsboro in this state; that, while at Winnsboro, and in the necessary discharge of his duties, he caused his engine to be moved along one of the tracks furnished by the Marshall & East Texas Railway Company at that place, for the purpose of examining and testing it, with a view of locating and repairing certain defects therein; that, while walking along watching the machinery of the slowly moving locomotive, he stepped upon or stumbled over a pole, or piece of timber, that had been "negligently left, placed, or allowed to remain along by the side of the track at that point, and that the piece of timber slipped, or rolled away, or plaintiff stumbled over the same, throwing plaintiff down, throwing his foot under the engine; and that the wheels passed over his foot and leg, crushing the same so badly that the same had to be amputated." Then follow other allegations not necessary here to mention. In a succeeding portion of the petition, and what may be termed a separate count, is the following: "The plaintiff shows that by some arrangement, the exact terms of which are unknown to plaintiff, and by some contract between the defendant Marshall & East Texas Railway Company and the defendant Missouri, Kansas & Texas Railway Company of Texas, that the defendant Marshall & East Texas Railway Company used the tracks, side tracks, and switches of the Missouri, Kansas & Texas Railway Company of Texas at Winnsboro, Tex., in entering the town of Winnsboro, and in having its passenger train remain at the said town of Winnsboro for one or more hours, during which time such repairs as were necessary were required to be made upon the engine of the Marshall & East Texas Railway Company by the engineer; and that, while the engine upon which he was running as engineer was placed upon the said track at said station, it became the plaintiff's duty to have the said engine moved along the track for

the purpose of ascertaining whether there were any defects," etc. Then follows a substantial repetition of former averments regarding the nature of the injury, the circumstances under which it occurred, and the conduct and omissions of duty upon which the charges of negligence are based. The defendants in the suit filed separate answers, but a part of the special answer of the Marshall & East Texas Railway Company was adopted by the Missouri, Kansas & Texas Railway Company of Texas. Upon a trial before a jury, a verdict was returned in favor of the Marshall & East Texas Railway Company against the plaintiff, and in favor of the plaintiff against the Missouri, Kansas & Texas Railway Company of Texas, the appellant here, for the sum of $17,500. The Missouri, Kansas & Texas Railway Company of Texas alone has appealed.

The facts show that Beasley was injured in the yards of the appellant at Winnsboro, Tex., under circumstances substantially as alleged in his petition. When the train upon which he was the engineer reached Winnsboro upon that occasion, it was placed upon a track called the "house track," there to remain until it started on its return trip to Marshall some time later in the day. Beasley testified that during the forenoon, while going from Marshall to Winnsboro, he discovered that there was what he called a "knock" in the machinery of his locomotive, and that when he reached Winnsboro he undertook to locate and remedy that condition before returning; that after the dinner hour the fireman, at his request, moved the engine slowly along the track upon which it had been placed, to enable Beasley to locate the "knock" and see that the machinery was in proper working order. He had previously been under the locomotive and tightened some wedges, after which he says, "I told him [the fireman] to move the engine. I was standing back even with the gangway between the engine and the tender, and I told him to back the engine; and, as he started to backing the engine, I started to walking up the left side of the engine, the north side of the engine, and got down something near the front drivers of the engine and turned around to look at the eccentrics, I think, and at that time the engine was backing up slowly about three miles an hour; and when I turned I stepped on this pole, or struck it in some way—anyway, it threw me, and I fell pretty near down; fell on my elbows; and my left foot went under the engine, and the engine mashed my foot just above the mouth of the shoe; at least, the doctors cut it off half way between the ankle and knee. I had not seen this pole before I stepped on it. When I stepped on this pole I was looking under the engine— looking under the boiler. The boiler of the engine is above the machinery; and I was looking beneath the boiler, and I was trying to see if any of the machinery was loose."

From other portions of the evidence it appears that the pole to which he had reference was an ordinary round pole, the size estimated to be from 3 to 5 inches in diameter and from 6 to 7 feet in length. According to Beasley's testimony, it was lying nearly at right angles with the rails, with one end pretty close to the rail. There was testimony which tended to show that the pole was one of a kind that had been used by lumber haulers in tightening chains around their loads of lumber to prevent the loads from slipping, and had been left upon the yards upon occasions when they unloaded lumber into cars at that place. Just how long this particular pole had been upon the track does not appear from the record, but there was testimony showing that poles of a similar kind were observed for a week, and longer, in the yards of the appellant, lying about at different places.

When this case was originally submitted in 1911, it was reversed and remanded for what we thought were errors contained in the charge to the jury. Later a motion for a rehearing by the appellee was overruled, but, upon further consideration, this order overruling that motion was set aside and all of what we regarded as the vital questions involved in the appeal were certified to the Supreme Court. A full statement of the facts and the opinion of the Supreme Court answering the questions certified will be found in M., K. & T. Ry. Co. v. Beasley (Sup.) 155 S. W. 183. All of those questions except one were answered in a way that requires us to overrule the assignments of error upon which they were based.

[1] That exception relates to the charge on the measure of damages. The question presented to the Supreme Court is as follows: "(4) Upon the measure of damages the court gave the following: 'If you should find that the plaintiff is entitled to recover against the defendant or defendants, then you will allow him a sum of money that will reasonably compensate him for the time he has lost by reason of the said injuries, if any, and the time that he will lose in the future, if you should find that he will lose any time in the future, and for his decreased capacity to earn money in the future, if any, and for mental and physical suffering endured by the plaintiff by reason of said injury, if any, and for such mental and physical suffering as the plaintiff may endure in the future, if you shall find that he shall endure mental and physical suffering in the future; and fix said damages at such amount as if paid at this time will reasonably compensate him for the damages sustained.' The following is the objection urged to that charge: 'The court erred in its charge to the jury on the measure of damages, in that the charge as given authorizes a double recovery in that the jury are instructed that the plaintiff may recover compensation for the time lost and the time

he will lose, and, in addition to this, for his decreased or diminished earning capacity. The decreased capacity might also include the time he might lose in the future.'" The answer in substance says the charge permits, but does not require, the jury to assess double damages. As indicated in the opinion of Chief Justice Brown, the defect, if any, in the charge consists in its failure to furnish a complete and accurate guide to the jury for estimating the value of the time which Beasley may lose in the future.

[2] Clearly such time should be valued at what Beasley in his crippled condition may be able to earn, and not at what his services would be worth in an uninjured condition. The charge given was not an affirmative misdirection, but was in a manner incomplete. If a special charge supplying this guide had been given there would have been no conflict between it and the main charge.

[3] The general rule, under our practice, where the defect results from the absence of fullness in the charge, and it is not otherwise misleading, is to require the party who has the right to complain to present and request a special charge covering the defect. His failure to do this deprives him of the right to a reversal on appeal because of the defect. M., K. & T. Ry. Co. v. Hurdle, 142 S. W. 992; Weaver v. Nugent, 72 Tex. 272, 10 S. W. 458, 13 Am. St. Rep. 792; Harrell v. Houston, 66 Tex. 278, 17 S. W. 731; Milmo v. Adams, 79 Tex. 526, 15 S. W. 690. There may be instances in which the omission in the main charge is so fundamental that it amounts to a failure on the part of the court to perform the duty of giving the instructions required by statute; but we do not think this is one of that character. It is much like the defect in the court's charge in the Hurdle Case cited above. There the Court of Civil Appeals held that the appellant should have requested a special charge on the subject, and affirmed the judgment because of the failure to do this. The Supreme Court refused a writ of error, thus indicating its approval of the ruling. If we can assume in this instance that the jury analyzed the court's instruction on the measure of damages by taking separately each of the elements which he mentioned as proper to be considered, and proceeded with mathematical nicety to allow one amount for mental and physical suffering, another for impairment of Beasley's ability to earn money in the future, and still another for the time he would probably lose in the future as a result of his injuries, we should also assume, in the absence of opposing evidence, that the jury acted as reasonable men would, according to the dictates of common reason, and allowed such damages only for loss of time in the future as might result from Beasley's impaired efficiency to earn money. We cannot assume that the jury fell into an error simply because it had the opportunity to go wrong. It requires no expert knowledge of the law for one to know that, after having allowed him full compensation for the impairment of his ability generally to earn money, in estimating the value of the time he would probably lose on account of his injuries in the future, his earning capacity in his impaired condition should be taken into consideration and constitute the basis upon which the computation must be made.

The remaining assignments of error are overruled without discussion.

The motion for rehearing is granted, and the judgment of the district court is affirmed.